IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS –
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURA MCKNIGHT, TRISHA TURNER, ANDREW BAKER, RACHAEL FREEDMAN, KIMBERLY MCCRAY, and MARGO MORENO,<br>     PLAINTIFFS,<br>V.<br><br>D. HOUSTON, INC. D/B/A TREASURES, A.H.D. HOUSTON, INC. D/B/A CENTERFOLDS, D N.W. HOUSTON, INC. D/B/A GOLD CUP, D. RANKIN, INC. D/B/A TROPHY CLUB, D WG FM, INC. D/B/A SPLENDOR, W.L. YORK, INC. D/B/A COVER GIRLS, AND, IN THEIR INDIVIDUAL CAPACITIES, ALI DAVARI and HASSAN DAVARI,<br>     DEFENDANTS. | §§§§§§§§§§§§§§§§§§§§§ | C.A. NO. 09-3345<br><br><br>Jury Trial Demanded |

# PLAINTIFFS' MOTION FOR NOTICE TO POTENTIAL CLASS MEMBERS

COME NOW, Plaintiffs LAURA MCKNIGHT, TRISHA TURNER, ANDREW BAKER, RACHAEL FREEDMAN, KIMBERLY MCCRAY, and MARGO MORENO, ("Plaintiffs"), on behalf of themselves and other similarly situated current and former employees of the named corporate and individual Defendants, and file this Motion for Notice to Potential Class Members, and would show unto the Court as follows:

# I.
# OVERVIEW

The Fair Labor Standards Act ("FLSA") allows employers to pay less than minimum wage to employees who receive tips. 29 U.S.C. § 203(m). In doing so, employers may take a "tip credit," which allows employers to include in their calculation of tipped employees' wages the amount that an employee receives in tips. *Id.* In order to apply a tip credit toward an employee's minimum wage: 1) The employer must inform the employee that it will take a tip credit; and 2) tipped employees must retain all the tips they receive, except those tips included in a tipping pool among employees who customarily and regularly receive tips. *Id.*

Defendants in the case at bar violate the FLSA by requiring their waitresses and bartenders to participate in an invalid tip pool, whereby they must pay to the house a flat percentage of their tips on every transaction involving a credit card. This percentage exceeds the actual cost to Defendants of the credit card transaction processing fee. This practice has been ongoing for many years and occurs across the board at Defendants' Houston, Texas locations.

# II.
# FACTUAL BACKGROUND

The Plaintiffs are former waitresses and bartenders who worked at Defendants' adult entertainment clubs a/k/a strip clubs. As set forth below, Plaintiffs are "tipped employees" under the FLSA. This case involves Defendants' practice of charging Plaintiffs, and those similarly situated, a credit card processing fee which exceeds the actual conversion fee assessed to Defendants by the credit card companies.

2

It is undisputed that Defendants are not tipped employees; therefore, they may not share in the tips with Plaintiffs. In this type of case, Plaintiffs, as tipped employees, are only required to contribute a portion of their tips to cover the actual costs of the credit card charge, they are entitled to retain the tip monies retained by Defendants. 29 U.S.C. § 203(m), *et seq.*

In summary, Defendants' conduct violates the FLSA because it assesses against Plaintiffs' tips a "credit card processing fee" which is roughly double the actual cost to Defendants of the credit card conversion. Such a policy violates the FLSA because Defendants, as employers, are not allowed to retain a portion of the Plaintiffs' tips. This policy is illegal as a matter of law.[1]

Defendants claim as a defense that withholding more than the actual conversion fee is acceptable under the law. Defendants claim that they suffer economic loss when a customer contests a credit card charge, and that such loss may be passed on to the tipped employees. Under the holdings of the cited case law, Defendants are simply wrong.

---

[1] See, i.e., *Bernal v. Vankar Enterprises*, 579 F.Supp.2d 804, 810 (W.D.Tex.2008) (To the extent Plaintiffs were not permitted to retain their tips to pay cash register shortages or unpaid tabs, Defendants disqualified themselves from taking advantage of the FLSA tip credit provisions.); *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1198-99 (5th Cir.1972) (An employer's policy of retaining tips to pay for cash shortages violates the FLSA. The Court agrees with the Secretary of Labor that such a policy shifts part of the employer's business expense to the employees and was illegal.); *Brennan v. Haulover Shark and Tarpon Club, Inc.*, 1986 WL 587 (S.D.Fla.) (Employer violated the FLSA by requiring waiters to pay for shortages caused by 'walkouts,' mistakes in addition, and returned credit card charges, which reduced their tipped wages.); *Chisolm v. Gravitas*, 2008 WL 838760, *4 (S.D.Tex.2008) (A glass-breakage fee assessed to waiters is a cost of doing business, and not a "facility" the cost of which may be shifted to the employee. An employer who charges waiters a glass-breakage fee violates the FLSA.).

3

However, even assuming the law permitted such excessive fees and other costs of business to be passed along to tipped employees, Defendants do not prevail since: 1) the "credit card charge backs" are more than covered by the millions of dollars collected by Defendants on the "$5 per lap dance surcharge" added to each patrons' tab for dances charged on a credit card[2]; 2) there is a 30-90 day waiting period before tips on large tabs are distributed to waitresses and bartenders to avoid pay-outs on tabs which may become "charge backs" (the delayed payment is also an illegal practice); 3) the waitresses and dancers are required to pay back in cash any amounts "charged back" on their tabs; 4) Plaintiffs are investigating whether Defendants write-off the "charge back" loss on their corporate tax returns; and/or 5) Plaintiffs are investigating what discounts the credit card processing companies offered to Defendants.

The foregoing list is exclusive; meaning, that if Plaintiffs prove only one of the above-listed items, then Defendants actually suffered no harm from the alleged charge backs and any excess fee charged to Plaintiffs was unlawful. This, of course, is if this Court determines that any fee may lawfully be charged for charge backs. If the Court determines that an employer may not charge employees for charge backs, then Defendants lose as a matter of law and the only remaining issue is damages.

Of equal import, the 5% fee is charged to Plaintiffs *in advance* of any charge back. Meaning, Defendants do not ever calculate the true cost they incurred as a result of "charge backs" and pass those actual costs along to Plaintiffs. Rather, they charge each and every waitress and bartender an advance fee of 5% because they believe that charge backs are likely to occur in the future.

---

[2] Lap dances paid in cash are $20 each, and $25 each if paid by credit card.

4

The credit card practice at issue herein is uniform among the employees, and, as set forth below, this case warrants the issuance of notice to those similarly situated to Plaintiffs.

## III.
## THE APPLICABLE LEGAL STANDARDS

The Fair Labor Standards Act requires employers to pay employees a legally prescribed minimum hourly wage. 29 U.S.C. § 206(a)(1). Provided certain conditions are satisfied, an employer may "pay tipped employees an hourly rate less than the federal minimum wage, by allowing them to credit a portion of the actual amount of tips received by the employee against the required hourly minimum wage." A "tipped employee" is an employee "engaged in an occupation in which he [or she] customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t); see *Chung v. New Silver Palace Rest., Inc.*, 246 F.Supp.2d 220, 228 (S.D.N.Y.2002). Under federal law, an employer is eligible for this "tip credit" if: (1) the employer has informed the tipped employee of statutory requirements related to the tip credit; and (2) "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m); see *New Silver Palace*, 246 F.Supp.2d at 228; *Sorensen v. CHT Corp.*, 2004 WL 442638, at *1 (N.D.Ill. 2004), quoting 29 U.S.C. § 203(m). These prerequisites are strictly construed. See *Bursell v. Tommy's Seafood Steakhouse*, 2006 WL 3227334, at *1 (S.D.Tex.2006), quoting *New Silver Palace*, 246 F.Supp.2d at 229.

5

Plaintiffs allege that Defendants violated these FLSA provisions by retaining a portion of the tips to cover costs associated with "charge backs." Federal law prohibits Defendants from retaining any portion of the tips if Defendants also relied on the "tip credit" to satisfy the minimum wage. 29 U.S.C. § 203(m).

## IV.
## ARGUMENT AND AUTHORITIES

### A. The FLSA Authorizes Collective Actions

Where the employer's violation of the FLSA is alleged to be widespread, aggrieved employees have the right to bring an action "for and in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). Actions pursued in such a representative capacity are referred to as "collective actions." Federal courts in Texas, including this one, have a long tradition of using the collective action procedure to protect employees who are denied their proper wages under the FLSA. See, e.g., *Riojas v. Seal Produce, Inc.*, 82. F.R.D. 613, 619 (S.D. Tax. 1979) (since the FLSA was "meant to aid injured parties," it is "only sensible that procedures facilitating this intent [such as providing notice to potential class members] would be favored").

Perhaps even more importantly, the United States Supreme Court has expressly held that courts may implement the collective action procedure by facilitating the issuance of notice to potential class members. *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989). Commenting favorably upon collective actions, the Supreme Court noted:

6

> "A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."

*Sperling*, 493 U.S. at 170. However, these benefits depend upon the potential class members' receipt of a notice which is "timely, accurate and informative." *Blake v. Colonial Savings, FA*, 2004 WL 1925535 (S.D. Tex. August 16, 2004) (J. Harmon) citing *Sperling*, at 172.

### B. The Legal Standard (Similarly Situated)

Generally, courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step approach in *Lusardi*, which imposes different and less stringent requirements than a Rule 23 class action, and the *Shushan* approach, which imposes the requirements of a Rule 23 class action. See *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D.Colo.1990). In *Mooney*, 54 F.3d. at 1216, the Fifth Circuit found it unnecessary to determine which method is most appropriate. Since *Mooney*, however, the Fifth Circuit has acknowledged the inapplicability of Rule 23 to a § 216(b) action in at least one context, holding that the interlocutory appeal provisions of Rule 23(f) do not apply in a § 216(b) action because a "216(b) FLSA action is not a Rule 23 class action." *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932 (5th Cir.2005).

Most courts use the "two-step ad hoc approach" in *Lusardi* as the preferred method for the similarly-situated analysis rather than Rule 23 requirements. See *Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 1989795, at *1 (S.D.Tex.

7

May 2, 2008) ("The prevailing analysis used by federal courts ... is the two-stage test set forth in *Lusardi*."); *Treme v. HKA Enters., Inc.*, No. 07-1134, 2008 WL 941777, at *2 (W.D.La. Apr.7, 2008) ("[A] review of the district court cases considering certification of an FLSA collective action reveals that a majority of courts in this circuit have favored the two-stage *Lusardi* approach.") (collecting cases); *Villatoro*, 286 F.Supp.2d at 810; see also *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n. 12 (11th Cir.1996) ( "[T]he requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23.").

The first stage of the *Lusardi* analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members. *Mooney*, 54 F.3d at 1213-14. " *Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Id.* at 1213. The court's decision in this first stage is often based only on the pleadings and affidavits that have been submitted. *Id.* at 1213-14. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Id.* at 1214. Although lenient, this standard requires a factual basis for allegations that potential members "were together the victims of a single decision, policy, or plan ...." *Id.* at 1214 n. 8 (quoting *Sperling v. Hoffman-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J.1988)); see also *Hall v. Burk*, No. 3:01-2487, 2002 WL 413901, at *3 (N.D.Tex. Mar.11, 2002) ("Unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden.") (citing *Haynes v. Singer Co.*,

8

696 F.2d 884, 887 (11th Cir.1983)).

At this first stage, there must be a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys.*, 242 F.Supp.2d 1096, 1103 (M.D.Ala.2003) (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D.Or.2002)); see also *Villatoro*, 286 F.Supp.2d at 810 ("Notice is appropriate when there is 'a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of an alleged policy or practice.'" (quoting *Crain v. Helmerich & Payne Int'l Drilling Co.*, 1992 WL 91946, at *2 (E.D.La. Apr.16, 1992)) (alteration removed)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F.Supp.2d 504, 507 (M.D.La.2005); see also *Barron*, 242 F.Supp.2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, the action proceeds as a collective action during discovery. See *Mooney*, 54 F.3d at 1214. Notice does not issue unless the court conditionally certifies the case as a collective action. See *Jones v. Casey's General Stores*, 517 F.Supp.2d 1080, 1086 (S.D.Iowa 2007) ("Formal notice to putative collective members in an FLSA action is provided after conditional certification has been approved by the court."); *Dominquez v. Minn. Beef Indus., Inc.*, No. 06-1002, 2007 WL

9

2422837, at *2 (D.Minn. Aug.21, 2007) ("If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' ") (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir.2001)).

### C. Potential Class Members are "Similarly Situated"

"Similarly situated," as contemplated by section 16(b), does not mean identically situated. *Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 947 (M.D.Fla. 1994). Therefore, "[w]hether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations." *Donohue v. Francis Services, Inc.*, 2004 WL 1161366, (E.D.La. May 24, 2004).

Instead, an FLSA class determination is appropriate when there is "a demonstrated similarity among the individual situations . . . some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Crain v. Helmrich & Payne Int'l Drilling Co.*, 1992 WL 91946, *2 (E.D.La. April 16, 1992) (certifying class of workers who were required to perform work prior to and after their paid shifts).

To be similarly situated, putative class members must have been affected by a common policy, plan, pattern, or practice. See, e.g., *O'Brien v. Ed Donnelly Enters., Inc.*, No. 2:04-cv-00085, 2006 WL 3483956, at *3 (S.D.Ohio Nov.30, 2006) (citations omitted). A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists. *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F.Supp.2d 793, 798 (E.D.La.2007). "The court

10

need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D.Conn.2007); see also *Berger v. Cleveland Clinic Found.*, No. 1:05-cv-1508, 2007 WL 2902907, at *20-21 (N.D.Ohio Sept.29, 2007).

This case is at the "notice stage" of the *Lusardi* analysis. Because the Plaintiffs have presented limited evidence, including their affidavits, and because they have not undertaken full discovery, the decision whether to issue notice to potential class members is "made using a fairly lenient standard." *Mooney*, F.3d at 1214. At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. See *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov 19, 2007) (citing cases); *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan 24, 2007).

In the case at bar, the waitresses and bartenders performed identical tasks. Additionally, each of the Plaintiffs and putative class members suffered a reduction in tips retained by Defendants for alleged costs related to credit card charge backs. Accordingly, Plaintiffs and other proposed opt-ins are similarly situated and notice should issue. See attached Declarations of Laura McKnight, Trisha Turner, Andrew Baker, Rachael Freedman, Kimberly McCray, and Margo Moreno, attached hereto as Exhibits 1-6.

11

### D. Defendants Are a 'Single, Integrated Enterprise' and/or Individually Liable[3]

The FLSA defines an "employer" in part, as "any person acting directly or indirectly in the interest of an employer." 29 U.S.C. § 203(d); see also *Cooke v. Jaspers*, 2010 WL 918342 (S.D.Tex. 2010). Whether an entity is an employer for the purpose of the FLSA turns on the "economic reality" of the working relationship. *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). The determination of an employment relationship "does not depend on ... isolated factors but rather upon the circumstances of the whole activity." *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947).

The FLSA's definition of "employer" contemplates the possibility of multiple employers. A single individual may be the employee of two or more employers at the same time. The Department of Labor regulations state that a joint employment relationship exists when there is an arrangement between employers to share an employee's services; one employer is acting directly or indirectly in the interest of the other employer or employers in relation to the employee; or the employers are associated with one another, directly or indirectly, with respect to the employment of the employee because one employer controls, is controlled by, or is under common control with the other employer. 29 C.F.R. § 791.2(b).

"An 'employer' subject to the FLSA is 'any person acting directly or indirectly in the interest of an employer in relation to an employee ...'" *Yaklin v. W-H Energy Services, Inc., et al.*, 2008 WL 4692419 (S.D.Tex.2008)(citing *Lehman v. Legg Mason*,

---

[3] This is not a case involving a distant, third-party entity. Assuming notice is issued, the co-defendants herein have employed certain of the putative class members.

12

*Inc.*, 532 F.Supp.2d 726, 733 (M.D.Pa.2007) (citing 29 U.S.C. § 203(d)). The mere fact that defendants are separate corporate entities is not sufficient to shield them from liability for FLSA violations. *Yaklin*, 2008 WL 4692419 (S.D.Tex 2008). Indeed, "[s]uperficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer. Factors considered in determining whether distinct entities constitute an integrated enterprise are: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983).

Defendants share interrelated operations, have common management, have the identical ownership, and the same financial control. At all relevant times, the activities of the Defendants have been conducted for a common business purpose under the common control of the Davaris, and therefore constitute an enterprise within the meaning of 29 U.S.C. Sec. 203(r).

"'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments." 29 U.S.C. Sec. 203(r)(1). The evidence adduced during full discovery will support Defendants' joint liability as a single enterprise.

## V.
### RELIEF SOUGHT: DISCLOSURE OF NAMES AND ADDRESSES AND NOTICE TO BARTENDERS AND WAITRESSES

Plaintiffs have demonstrated the existence of a factual and/or legal nexus binding them to potential class members as victims of a policy or practice of

13

Defendants. Plaintiffs have detailed their collective action allegations, which are supported by the declarations of all named Plaintiffs. Plaintiffs have presented evidence that other similarly situated individuals exist, and that Defendants had and continue to have a practice of retaining an illegal portion pf Plaintiffs' tips. This evidence more than satisfies the "lenient" standard for collective action notice. *Mooney*, 54 F.3d at 1213-14.

Plaintiffs seek an Order from this Court requiring Defendants to produce the names and addresses of all current and former waitresses and bartenders who worked for Defendants between October 15, 2006, and the present. Plaintiffs also seek permission to issue notice to these individuals of the existence of this lawsuit and of their right to join it if they meet certain criteria. Plaintiffs' proposed notice and consent form are attached as Exhibits 7 and 8, respectively. Plaintiffs request that Defendants provide the contact information within fourteen (14) days from the entry of the Court's Order and in usable electronic form to reduce any delays in sending out the Notices. Plaintiffs also seek an Order tolling the statute of limitations for 90-days as to putative class members from the date of this filing.

## VI.
## CONCLUSION

Plaintiffs have met their burden to produce evidence supporting the collective allegations in their Collective Action Complaint. Based on the limited evidence presented, and the applicable legal standards, the Court should order disclosure of the contact information requested herein and permit Plaintiffs to issue notice to the potential class members.

Respectfully submitted,

## SHELLIST ✯ LAZARZ, LLP


 /s/ Martin A. Shellist
MARTIN A. SHELLIST
TBA # 00786487
1900 West Loop South, Suite 1910
Houston, Texas  77027
(713) 621-2277
(713) 621-0993 - fax

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF CONFERENCE

I hereby certify that Defendants oppose the issuance of Notice to Potential Class Members in this case.

 /s/ Martin A. Shellist
MARTIN A. SHELLIST

### CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2010, a true and correct copy of the foregoing instrument was forwarded to all known counsel of record at the addresses listed below by notice of electronic filing and/or facsimile in accordance with the Federal Rules of Civil Procedure.

| | |
|---|---|
| Lauren M. Serper<br>**Law Offices of Lauren M. Serper, PC**<br>3405 Edloe, Suite 200<br>Houston, Texas 77027 | Al Van Huff<br>**Monshaugen & Van Huff, P.C.**<br>1225 North Loop West, Suite 640<br>Houston, Texas 77008 |

 /s/ Martin A. Shellist
MARTIN A. SHELLIST