IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURA MCKNIGHT, ET AL., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| V. | § | **Civil Action No. H-09-3345** |
| | § | |
| D. HOUSTON, INC. D/B/A | § | |
| TREASURES, ET AL., | § | |
| | § | |
| **Defendants.** | § | **Jury Trial Demanded** |

### DEFENDANTS' RESPONSE TO
### PLAINTIFFS' MOTION FOR NOTICE TO CLASS MEMBERS

TO THE HONORABLE LEE H. ROSENTHAL, UNITED STATES DISTRICT JUDGE:

Defendants D. Houston, Inc. d/b/a Treasures ("Treasures"), A.H.D. Houston, Inc. d/b/a Centerfolds ("Centerfolds"), D N.W. Houston, Inc. d/b/a Gold Cup ("Gold Cup"), D. Rankin, Inc. d/b/a Trophy Club ("Trophy Club"), D WG FM, Inc. d/b/a Splendor ("Splendor"), W.L. York, Inc. d/b/a Cover Girls ("Cover Girls"), and, in their individual capacities, Ali Davari and Hassan Davari, file their response to plaintiffs' motion for notice to class members.

### A. Nature & Stage of the Proceeding

The original collective action complaint in this case was filed on October 15, 2009. In the complaint, plaintiffs make the following allegations:

1. That plaintiffs are former servers and/or bartenders who worked for defendants;

2. That plaintiffs were tipped employees with the meaning of the FLSA;

3. That defendants unlawfully required plaintiffs to pay a flat percentage of their tips on every transaction involving a credit card and that said percentage exceeds the actual cost to defendants of the credit card

transactions;

4.      That even assuming the percentage withheld was not excessive, such withholding was unlawful for various other reasons; and

5.      That defendants are liable to plaintiffs as their employers, joint-employers, and because they are a single-integrated business enterprise.

*See* Plaintiffs' Collective Action Complaint, pages 2, 6, and 7, Docket Entry No. 1.

Defendants filed their original answer on December 16, 2009.  See Defendants' Original Answer, Docket Entry No. 14.

Plaintiffs filed consents to be party plaintiffs in this case on February 2, 2010.  *See* Plaintiffs' Notice of Filing Notices of Consent, Docket Entry No. 20.

Plaintiffs and defendants have exchanged requests and responses to written discovery (interrogatories and requests for production).

On April 7, 2010, plaintiffs deposed defendant Hassan Davari, who is an officer of the corporate defendants.  *See* Davari Deposition Transcript, at page 12, lines 2-8, attached as Appendix 1.

On May 5, 2010, plaintiffs filed their motion for notice to potential class members.[1]

---

[1] Defendants hereby object to the declarations of McKnight, Turner, Baker, Freedman, McCray, and Moreno on the basis that said declarations are not credible, not based on personal knowledge, not clear and direct, and contain conclusory statements.  Each of the declarations state under penalty of perjury that Ali and Hassan Davari are the owners of the corporate defendants, yet this statement is false as the owner of the corporate defendants is a holding company, D. Texas Investments, Inc.  *See* Affidavit of Hassan Davari, attached as Appendix 8.  The declarations of both Turner and Baker state that they would have to wait up to 60 or 90 days to get their tips on larger credit cards, yet they both testified that they received all of their tips at the end of every shift.  *See* p. 14-15, *infra.*  The declaration of Turner states that she was required to pay back tips on credit card charge backs, yet she testified that was never required to pay back tips on a credit card charge back.  *Id.*  The declarations of Moreno and Freedman state that they often had to wait to get paid their tips on larger credit card charges, yet they testified that they were always paid their tips either at the end of their shifts or the next day if the club ran out of cash due to the high volume of credit card transactions and associated tips that needed to be liquidated.  *Id.* The declaration of McKnight states that she often had to wait to get her tips on larger credit card charges and that she was required to pay back tips on charged off credit cards by bringing cash in an envelope

*See* Plaintiffs' Motion for Notice to Potential Class Members, Docket Entry No. 32.

On May 11, 13, 14 and 18, 2010, defendants deposed plaintiffs.  *See* McKnight, Turner, Baker, Freedman, McCray, and Moreno Deposition Transcripts, attached as Appendixes 2, 3, 4, 5, 6, and 7.

On May 19, 2010, the court signed a motion to enlarge time for the response to the motion for notice to potential class members, setting a due date of June 4, 2010.  See Order Granting Motion to Enlarge Time, Docket Entry No. 33.

### B. Factual Background

Treasures, Centerfolds, Gold Cup, Trophy Club, Splendor, and Cover Girls are Texas corporations that conduct business in Harris County, Texas.  *See* Affidavit of Hassan Davari, attached as Appendix 8.

Treasures, Centerfolds, Gold Cup, and Splendor are currently operational, while Trophy Club and Cover Girls closed for business on October 9, 2009 and January 17, 2007, respectively.  *Id.*

Although all of the aforementioned businesses are owned by the same holding company, which has not been named as a defendant in this case, each business maintains its own location and has its own management, bank accounts, liquor license, payroll, federal employer identification number, and Texas comptroller account number.  *Id.*

Although plaintiffs' complaint and motion for notice each make the general allegation that plaintiffs were employed by defendants, plaintiffs' deposition testimony demonstrate

---

and giving it to "Morris," yet she testified at that she was never required to pay the club back for tips on a charged back tab and that there were only three instances that she did not receive her tips in cash on credit card tabs at the end of her shift and that on each of these occasions she was subsequently paid the tips in cash.  *Id.*

3

that they were employed by defendants during the three year period preceding the

February 2, 2010 filing of the notice of consents as follows:[2]

Baker:      Employed by Treasures as a bartender during the period February, 2007 to April, 2007 and was paid $30.00 per shift plus tips;

Turner:      Employed by Treasures as a bartender during the period February, 2007 to December, 2008 and was paid $2.13 per hour plus tips until January, 2008 when she began being paid the federal minimum wage;

Freedman:      Employed by Treasures as a waitress during the period February, 2007 to May, 2008 and was paid $2.13 per hour plus tips;

Moreno:      Employed by Treasures as a waitress during the period February, 2007 to March, 2009 and was paid $2.13 per hour plus tips;

McKnight:      Employed by Treasures as a waitress during the period February, 2007 to April, 2009 and was paid $2.13 per hour plus tips.

McCray:      Employed by Treasures as a waitress during the periods February, 2007 to June, 2007 & August, 2008 to October, 2008 and was paid $2.13 per hour plus tips;

                Employed by Centerfolds as a waitress during the period June, 2007 to August, 2008 and as paid $2.13 per hour plus tips; and

*See* Baker Deposition Transcript, page 8, line 16 - page 9, line13; page 10, line 22 - page 11, line 1, attached as Appendix 4; Turner Deposition Transcript, page 8, lines 13-17; page 9, lines 10-13; page 10, lines 11-24, attached as Appendix 3; Freedman Deposition Transcript, page 10, lines 14-20, attached as Appendix 5; Moreno Deposition Transcript, page 7, lines 9-23, attached as Appendix 7; McKnight Deposition Transcript, page 8 line 24 - page 9, line 21, attached as Appendix 2; McCray Deposition Transcript, page 16, lines 10-20; page 25, lines 16-22, attached as Appendix 6.

It is undisputed Treasures is the only defendant that employed Moreno, Turner,

Freedman, Baker, and McKnight during the relevant period and that none of these plaintiffs

---

[2] Although the general statute of limitations for an FLSA claim is two years (*See* 29 U.S.C. § 255(a)), defendants acknowledge that this court typically recognizes that class certification is appropriately limited to workers employed by a defendant up to three years before the issuance of notice is approved (*See Watson v. Travis Software Corp.*, 2008 WL 5068806, *8 (S.D. Tex. 2008)) and will refer to the "relevant period" for purposes of this response as three years prior to the filing of the consents by the plaintiffs in this case (February, 2007 - February, 2010).

were employed by Centerfolds, Gold Cup, Trophy Club, Splendor, or Cover Girls during the relevant period. *Id.* The only plaintiff employed by any defendant other than Treasures during the relevant period is McCray, who alleges that she was employed by Centerfolds during a two month period in 2008. See McCray Deposition Transcript, page 9, lines 19-21, attached as Appendix 6.

## C. Statement of Issues

There are several issues presented by plaintiffs' motion for notice and defendants' response:

Issue No. 1: Whether collective action treatment is appropriate as to all defendants where plaintiffs have not demonstrated a common policy or plan that violates the FLSA.

Issue No. 2: Additionally or in the alternative, whether collective action treatment is appropriate to certain defendants when there was no employer / employee relationship between any of the plaintiffs and certain defendants.

Issue No. 3: Additionally or in the alternative, whether collective action treatment is appropriate as to Centerfolds when only one of the plaintiffs was employed by Centerfolds for a two month period during the relevent period.

Issue No. 4: Additionally or in the alternative, whether collective action treatment is appropriate to certain defendants based upon insufficient joint employment allegations and insufficient single integrated business enterprise allegations.

## D. The Legal Standard Regarding Notice to Potential Class Members

Section 216(b) of the FLSA creates a cause of action for employees against employers violating the compensation requirements of sections 206 and 207. 29 U.S.C. § 216(b). Section 216(b) provides:

An action ... may be maintained ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No

5

employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* Section 216(b) establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). District courts have discretion whether to order notice to potential plaintiffs. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170-171, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989); *Villatoro v. Kim Son Rest., L.P.*, 286 F.Supp.2d 807, 808 (S.D. Tex. 2003).

Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step *Lusardi* approach and the class-action based *Shushan* approach. See *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J.1987); *Shushan v. Univ. of Colo. at Boulder,* 132 F.R.D. 263 (D.Colo.1990). Most courts use the "two-step *ad hoc* approach" as the preferred method for the similarly-situated analysis rather than the Rule 23 requirements. *See, e.g., Maynor v. Dow Chemical,* 671 F.Supp.2d 902, 930-31 (S.D.Tex.2009); *Mielke v. Laidlaw Transit, Inc.,* 313 F.Supp.2d 759, 762 (N.D.Ill.2004) (stating that most courts have employed or implicitly approved the two-step method); *Basco v. Wal-Mart Stores Inc.,* No. Civ.A. 00-3184, 2004 WL 1497709, at *4 (E.D.La. July 2, 2004); *Villatoro v. Kim Son Restaurant, L.P.,* 286 F.Supp.2d 807, 810 (S.D.Tex.2003); *see also Grayson v. K Mart Corp.,* 79 F.3d 1086, 1096 n. 12 (11th Cir.1996) (noting that "the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23"); *Lachapelle v. Owens-Illinois, Inc.,* 513 F.2d 286, 288 (5th Cir.1975) (finding a fundamental difference between Rule 23 class actions

6

and FLSA collective actions).

"Lusardi and its progeny are remarkable in that they do not set out a definition of 'similarly situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage] analysis." *Mooney,* 54 F.3d at 1213. The first step of analysis is the "notice stage" in which the district court decides whether to issue notice to potential class members. *See id.* at 1213-14. The court's decision at this stage is often based only on the pleadings and affidavits that have been submitted. *Id .* "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt-in. *Id.* at 1214 n. 8. Even this lenient standard appears to require substantial allegations that potential members "were together the victims of a single decision, policy, or plan...." *Id.* (citing *Sperling v. Hoffman-La Roche, Inc.,* 118 F.R.D. 392, 407 (D.N.J.1988)). At this stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. *See Prater v. Commerce Equities Mgmt. Co.,* No. H-07-2349, 2007 WL 4146714, at *4 (S.D.Tex. Nov.19, 2007); *Simmons v. T-Mobile USA, Inc.,* No. H-06-1820, 2007 WL 210008, at *5 (S.D.Tex. Jan.24, 2007). A factual basis for the allegations is needed to satisfy the first step. *See Hall v. Burk,* No. Civ. 301 CV2487H, 2002 WL 413901, at *3 (N.D.Tex. Mar.11, 2002) (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden"); *see also Haynes v. Singer Co.,* 696 F.2d 884, 887 (11th Cir.1983).

7

At the first stage, there must be a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry County Sch. Sys.,* 242 F.Supp.2d 1096, 1103 (M.D.Ala.2003) (citing *Sheffield v. Orius Corp.,* 211 F.R.D. 411, 416 (D.Or.2002)); *see also Basco,* 2004 WL 1497709, at \*5 (quoting *Heagney v. European Am. Bank,* 122 F.R.D. 125, 127 (E.D.N.Y.1988) (stating that certification is appropriate when some factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.,* 370 F.Supp.2d 504, 507 (M.D.La.2005); *see also Barron,* 242 F.Supp.2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney,* 54 F.3d at 1214. The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *See id.; Lusardi,* 118 F.R.D. at 359. At that point, the court makes a factual determination as to whether there are similarly situated employees.[3] *Id.* If the district court

---

[3] In the case at bar, defendants urge the court to apply the second stage level of review in its consideration of the notice issue as substantial discovery has occurred. Several other courts have concluded that when substantial discovery has occurred, the court may bypass the first stage and proceed directly to the second stage of the certification analysis. *See England,* 370 F. Supp.2d at 509 (stating that analysis under the second step was proper because substantial discovery had occurred, providing a sufficient record); *Basco,* 2004 WL 1497709, at \*4; *Pfohl v. Farmers Ins. Group,* 2004 WL 554834, at \*3 (C.D. Cal. Mar. 1, 2004) (finding that the second-step inquiry was appropriate when sufficient discovery

finds that the claimants are similarly situated, the collective action may proceed.  *See Mooney,* 54 F.3d at 1214; *Basco,* 2004 WL 1497709, at *3.  If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims. *England v. New Century Fin. Corp.,* 370 F.Supp.2d 504, 508 (M.D.La.2005).

Notice does not issue unless the court conditionally certifies the case as a collective action.  *See, e.g., Jones v. Casey's General Stores,* 517 F.Supp.2d 1080, 1086 (S.D.Iowa 2007) ("Formal notice to putative collective members in an FLSA action is provided after conditional certification has been approved by the court."); *Dominquez v. Minn. Beef Indus., Inc.,* No. 06-1002 (RHK/AJB), 2007 WL 2422837, at *2 (D.Minn. Aug.21, 2007) ("If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' ") (quoting *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir.2001)).

"In deciding whether plaintiffs have met the requirements of either the 'spurious' class action procedure or the 'two-step' approach, the court should be mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation." *H & R Block, Ltd. V. Housden,* 186 F.R.D. 399, 401 (E.D. Tex. 1999) (citing *D'Anna v. M/A-COM, Inc.*, 903 F.Supp. 889, 894 (D. Md. 1995)).  "Further, 'employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses.'" *Id.* (citing *D'Anna*, 903 F.Supp. at 894).

### E. Arguments & Authorities

---

related to certification had been undertaken).

**E(1)(a).** **Plaintiffs have not demonstrated a common policy or plan that violates the FLSA.**

The court should deny certification in this case as to all defendants because plaintiffs' have failed to submit evidence demonstrating that defendants have violated the FLSA with regard to allegedly unlawful 5% withholding from their credit card tips. *See, e.g., O'Brien v. Ed Donnelly Enters., Inc.*, No. 2:04-CV-00085, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006) (citations omitted) (Plaintiffs must demonstrate that the defendants have a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in plaintiff."). Plaintiffs have alleged that defendants have violated the FLSA by requiring them to pay a flat percentage of their tips on every transaction involving a credit card in that said percentage exceeds the actual cost to defendants of the credit card transactions. *See* Plaintiffs' Motion for Notice to Potential Class Members, page 2, Docket Entry No. 32.

It is well established that an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip, without surrendering its partial set-off against minimum wages under the FLSA. See *Meyers v. Copper Cellar Corp.*, 192 F.3d 546, 553 (6th Cir. 1999); *see also Bollenberg v. Landry's Restaurant*, 2005 WL 2121810 *3-4 (S.D. Tex. 2005) (stating that "being allowed to estimate is important" in the context of withholding a percentage of tips to cover the cost of converting the charges to cash). The Sixth Circuit Court of Appeals held in *Meyers* that such outlays may lawfully include the aggregate of the credit card companies' processing fees and losses caused by charged customer obligations (including any attendant credited gratuities) which, for whatever reason, ultimately were not collectable. *Id.*

The Meyers court stated that while its total deductions from employees' tip incomes may not enrich it, an employer may lawfully deduct an amount that restores it to the approximate financial posture that it would have occupied if it had not undertaken to collect credit card tips for its employees during the relevant time period. *Id.* at 555. The *Meyers'* court explained that an employer's extraction from each charged employee tip of a fixed composite percentage handling fee, which reasonably reimburses it in the aggregate for it total expenditures related to processing its employees' total credit card tip, may be analogized to a Congressionally-sanctioned tip pool. *Id* at 555 - 556. In effect, the employees have pooled the collective expense of liquidating their credit card tips by surrendering to the employer a consistent fixed percentage of their charged gratuities which, in sum, refunded the employer's expenditures reasonably incurred in providing the tip-settlement service, even though, on occasion, the amount withheld by the employer on a specific account may exceed the actual cost of clearing that particular tip. *Id.* In exchange, the overall benefits of the employer's policies and practices related to charged tips inure to each participating tipped employee. *Id.*

In the case at bar, Treasures relevant credit card sales, credit card processing fees, and credit card charge backs indicate the cost of liquidating the credit card charges at issue is equivalent to the 5% fee that plaintiffs claim is unlawful. For example, for the period January, 2008 through June, 2008, the relevant credit card sales at Treasures was $11,240,710.49, the credit card processing fees totaled $290,145.00, and the credit card charge backs were $293,147.00, which demonstrates that the cost of liquidating the credit card tips was 5.19% for this period. *See* Affidavit of Hassan Davari, attached as Appendix 8. Similarly, for the period. January, 2009 through June, 2009, the relevant credit card

sales at Treasures was $10,777,904.76, the credit card processing fees totaled $277,166.50, and the credit card charge backs were $266,070.00, which demonstrates that the cost of liquidating the credit card tips was 5.04% for this time period. *Id.* These samples are demonstrative of other six month periods during the relevant period at Treasures and the other corporate defendants in this case. *Id.*

Here, plaintiffs have failed to submit any evidence showing that the 5% allegedly withheld from their credit card tips has unlawfully enriched defendants in violation of the FLSA as interpreted by the *Meyers* court. Plaintiffs have likewise failed to cite to any case law demonstrating that it is unlawful for an employer to deduct an amount equivalent to the aggregate cost associated with liquidating credit card tips. Because of these defects with regard to plaintiffs' claims against defendants and their motion for notice to class members, the court should exercise its discretion in favor of the defendants and deny collective action certification as to all defendants.

### E(1)(b).    Plaintiffs' alternative argument fails to demonstrate a common policy or plan that violates the FLSA.

Plaintiffs have asserted an alternative argument that even assuming that *Meyers* permits a 5% withholding under the facts of this case, such withholding is still unlawful for the following reasons:

1.  The "credit card charge backs" are covered by the millions of dollars collected by defendants on the "$5 per lap dance surcharge" added to each patrons' tab for dances charged on a credit card;

2.  There is a 30 - 90 day waiting period before tips on large tabs are distributed to waitresses and bartenders to avoid pay-outs on tabs which may become "charge backs;" and

3.  The waitresses and dancers are required to pay back in cash any amounts "charged back" on their tabs.

12

*See* Plaintiffs' Motion for Notice to Potential Class Members, page 4, Docket Entry No. 32.

These reasons fail to undermine the 5% withholding alleged by plaintiffs and are insufficient to justify collective action treatment of this case because there is no evidence presented by plaintiffs that the 80% / 20% split between the exotic dancers and the corporate defendants in connection with dance income has any relationship with the aggregate of the credit card companies' processing fees or the losses caused by charged customer obligations (including any attendant credited gratuities) which, for whatever reason, ultimately were not collectable; because the alleged policy of a 30 - 90 day waiting period on large tabs is not supported by plaintiffs' deposition testimony; and because the alleged policy requiring waitresses to pay back in cash any amounts "charged back" on their tabs is likewise not supported by plaintiffs' deposition testimony.

With regard to the alleged 80% / 20% split between the exotic dancers and the corporate defendants in connection with dance income, the dancers are commissioned salespeople who retain 80% of their sales from dance income derived from their performances at the businesses, while the businesses retain 20% of their sales from dance income derived from their performances as profit.  *See* Davari Deposition Transcript, page 83, line 12 - page 84, line 2; page 98, lines 6-14; page 102, line 16 - page 103, line 8; page 104, lines 12-17, page 109, lines 3-18, page 129, lines 9-17, and page 169, lines 9-16, attached as Appendix 1; Affidavit of Hassan Davari, attached as Appendix 8.  There is absolutely no relationship between this dynamic and the aggregate of the credit card companies' processing fees or the losses caused by charged customer obligations (including any attendant credited gratuities) which, for whatever reason, ultimately were not collectable. *See* Affidavit of Hassan Davari, attached as Appendix 8.  Plaintiffs' factually

unsupported and conclusory allegation that "the 'credit card charge backs' are covered by the millions of dollars collected by defendants on the '$5 per lap dance surcharge' added to each patrons' tab for dances charged on a credit card" is akin to arguing that entry fees paid by credit cards or that net profits from the sale of liquor attributable to credit cards should cover the credit card charge backs, all of which conflict with the general principles set forth in the *Meyers*.

With regard to the alleged policies regarding a 30 - 90 day waiting period and waitresses paying back the clubs for tips on charged back tabs, Turner, a bartender, testified that during her seven years at Treasures she was never required to pay for credit card charge backs and that all of her tips were paid to her in cash at the end of every shift. *See* Turner Deposition Transcript, page 41, lines 20-23; page 42, line 23 - page 43, line 4, attached as Appendix 3. Baker, a bartender who only has on three months of employment within the relevant period, testified that during his eleven years at Treasures his tips were always paid to him at the end of his shift and that he "very rarely" was required to pay back his tips on credit card charge backs. *See* Baker Deposition Transcript, page 20, lines 2-8; page 33, lines 3-18, attached as Appendix 4.

Similarly, McCray, a waitress, testified at her deposition that during her seven years at Treasures her tips were held for a period of time on only five tabs, that she was not paid on charged back tabs on only two out of these five tabs, and that all of these instances were prior to 2007. *See* McCray Deposition Transcript, page 42, line 3 - page 43, line 5, attached as Appendix 6. Moreno, a waitress, testified that during her four years at Treasures she was always paid her credit card tips either at the end of her shift or the next day if the club ran out of cash due to the high volume of credit card transactions and

14

associated tips that needed to be liquidated.[4]  *See* Moreno Deposition Transcript, page 25 lines 6-16, page 23, lines 4-14, attached as Appendix 7.  Freedman, a waitress, testified that during her two years at Treasures there were only two occasions where she was required to pay back the tips on disputed tabs and that she would sometimes receive her cash tips the following day due if the club ran out of cash due to the high volume of credit card transactions and associated tips that needed to be liquidated.  *See* Freedman Deposition Transcript, page 47, lines 4-12; page 26, lines 6-9, 20-25, attached as Appendix 5.  McKnight, a waitress, testified that during her seven years at Treasures she was never required to pay the club back for tips on a charged back tab and that there were only three instances that she did not receive her tips in cash on credit card tabs at the end of her shift and that on each these occasions she was subsequently paid the tips in cash.  *See* McKnight Deposition Transcript, page 52, line 24 - page 53, page 67, line 11 - page 69, line 19., attached as Appendix 2.

The aforementioned testimony of the plaintiffs fails to demonstrate a common policy or plan regarding a 30 - 90 day waiting period and waitresses paying back the clubs for tips on charged back tabs.  Instead, plaintiffs have testified to facts that are isolated, sporadic, distinct and specific them individually, and that are purely personal to each of them and that were not a result of any generally applicable rule, policy, or practice.  Therefore, plaintiffs' alternative argument regarding a 30 - 90 day waiting period and waitresses paying back the clubs for tips on charged back tabs fails as it is insufficient to satisfy the similarly

---

[4] Where tips are charged on a credit card, it is permissible for an employer to pay the tips due to the employee on the next business day.  *See* U.S. Department of Labor, Wage and Hour Division Field Operations Handbook ¶ 30d05(c)-(d).

15

situated inquiry in connection with the motion for notice to class members.

**E(2).** **Additionally or in the alternative, collective action treatment is not appropriate as to certain defendants when there was no employer / employee relationship between any of the plaintiffs and certain defendants.**

It is undisputed that none of the named plaintiffs in this case were employed by Gold Cup, Trophy Club, Splendor, or Cover Girls at any time during relevant period.  Therefore, plaintiffs have no cause of action against any of these four businesses because none of these businesses were plaintiffs' "employer."

The FLSA requires that "employers" must follow certain practices in pay and overtime.  29 U.S.C. § 207.  Under the FLSA, "the term 'employee' means any individual employed by an employer."  Id. at § 203(e)(1).  Employer is defined as follows:

> (d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

Id. at 207(d).

In considering whether a party is an "employer," a court considers whether the alleged employer had the power to hire and fire employees, supervised and controlled employee work schedules or conditions of employment, determined the rate and method of payment, and maintained employment records.  *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990); *Hopkins v. Cornerstone America*, 2007 WL 959042, at *13 (N.D. Tex. Mar. 30, 2007) (citing *Thrash v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990).

An employee alleging violation of the FLSA's overtime requirement has the burden of proving "that there exists an employer-employee relationship" as a part of his *prima facie*

case by the preponderance of the evidence.  *Cash v. Conn Appliances, Inc.*, 2 F.Supp 2d 884, 892 (E.D. Tex. 1997).  Whether a party is an "employer" is a question of law.  *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 329 (5th Cir. 1993).

Additionally, it is well established that enterprise analysis is different from analysis of who is liable under the FLSA and that the FLSA premises liability on an employer-employee relationship.  *See Patel v. Wargo*, 803 F.2d 632, 635-638.  Liability under the FLSA hinges on "whether or not there is an employment relationship, for that is the frame of reference in which Congress places its mandates."  *Id.* at 636 (citing *Mitchell v. Whitaker House Cooperative, Inc.* 275 F.2d 362, 364 (1st Cir. 1960).  "[T]he test of the applicability of the Act has been held to be whether or not as a matter of economic fact there is an employer-employee relationship involved."  *Id.*  Therefore, because there was no employer-employee relationship between Gold Cup, Trophy Club, Splendor, and Cover Girls, none of these businesses are liable to any of the plaintiffs as a matter of law and collective action treatment as to these businesses is therefore inappropriate as to these defendants.

**E(3).   Additionally or in the alternative, collective action treatment is not appropriate as Centerfolds because only one of the plaintiffs was employed by Centerfolds for a two month period during the relevant period.**

The only plaintiff that has alleged an employer / employee relationship with Centerfolds during the relevant period is McCray, who testified that she was employed by Centerfolds as a waitress for two months in.  *See* McCray Deposition Transcript, pages 9, lines 19-21, attached as Appendix 6.  With regard to McCray's brief term of employment by Centerfolds, she testified that there were no issues of credit card charge backs or a waiting period on credit card tips associated with larger or suspect tabs at that business.

17

*Id.* at page 32, lines 14-19; page 43, lines 15-17.

Because McCray is the only plaintiff that was allegedly employed by Centerfolds during the relevant period, collective action treatment as to this defendant should be denied because plaintiffs have failed to show that: 1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist at Centerfolds; 2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; or 3) there are other similarly situated employees of Centerfolds that want to opt-in to this suit.   *See Detho v. Bilal*, 2008 WL 1730542, at *3 (S.D. Tex. April 10, 2008); *Detho v. Bilal*, 2008 WL 2962821, at *2 (S.D. Tex. July, 28, 2008).

Allegations of one plaintiff alone are generally insufficient to justify notice.   *Id.* Therefore, because only McCray was employed by Centerfolds during the relevant period, plaintiffs have not sufficiently demonstrated that other aggrieved individuals exist at Centerfolds, that any such individuals are similarly situated to plaintiffs in relevant respects, or that there are similarly situated employees of Centerfolds that want to opt-in to this suit. Therefore, the motion for notice as to Centerfolds should be denied.

### E(4).   Additionally or in the alternative, collective action treatment is not appropriate to certain defendants based upon insufficient joint employment allegations and insufficient single integrated business enterprise allegations.

Although plaintiffs have alleged the legal theories of joint employment and single integrate business enterprise and are seeking an order for notice as to businesses that did not actually employ any of the plaintiffs during the relevant period based upon these theories, they have failed present evidence sufficient to warrant such an order from the court.   Therefore, even if the court were to grant plaintiffs' motion for notice as to

Treasures, it should deny notice as the other corporate defendants named in this case on the basis of joint employer or single integrated business enterprise theories because extending notice requirement to employees of these defendants is unwarranted under the fact of this case and applicable law.

With regard to the joint employment issue alleged by plaintiffs, the Department of Labor regulations state that a joint employment relationship exists when there is an arrangement between employers to share an employee's services; one employer is acting directly or indirectly in the interest of the other employer or employers in relation to the employee; the employers are associated with one another, directly or indirectly, with respect to the employment of the employee because one employer controls, is controlled by, or is under common control with the other employer.  29 C.F.R. § 791.2(b).  The DOL regulations also state that whether the joint employment relationship exists for the purpose of FLSA liability defends on the facts.  Joint employment will usually arise when more than one employer share a single employees services or in the context of staffing companies and their clients.

In the case at bar, Treasures was the only defendant to actually employ plaintiffs during the relevant period (other than Centerfolds which employed McCray for a two month period in 2008).   There is no evidence presented by plaintiffs demonstrating that defendants shared the services of plaintiffs.  In fact, McCray testified that when she was employed by Centerfolds she went through the interview process with that business's management and was paid by Centerfolds.  *See* McCray Deposition Transcript, page 13, line 21 - page 14, line 4; page 30, lines 9-18. attached as Appendix 6.  There is no evidence that Treasures ever loaned any of the plaintiffs to any of the other defendants or

19

that any of the other defendants ever exercised controlled over any of the plaintiffs.  These facts are insufficient to demonstrate a joint employer relationship among the defendants such that the court should grant the motion for notice based upon this theory as to Centerfolds, Gold Cup, Trophy Club, Splendor, and Cover Girls.

With regard to the single integrated business enterprise theory alleged by plaintiffs, as stated above, it is well established that enterprise analysis is different from analysis of who is liable under the FLSA and that the FLSA premises liability on an employer-employee relationship.  *See Patel v. Wargo*, 803 F.2d 632, 635-638.  Liability under the FLSA hinges on "whether or not there is an employment relationship, for that is the frame of reference in which Congress places its mandates."  *Id.* at 636 (citing *Mitchell v. Whitaker House Cooperative, Inc.* 275 F.2d 362, 364 (1st Cir. 1960).  "[T]he test of the applicability of the Act has been held to be whether or not as a matter of economic fact there is an employer-employee relationship involved."  *Id.*  Therefore, because there was no employer-employee relationship between any plaintiff and Gold Cup, Trophy Club, Splendor, and Cover Girls, none of these businesses are liable to any of the plaintiffs as a matter of law and collective action treatment as to these businesses is therefore inappropriate.[5]

---

[5] With regard to single integrated enterprise theory outside of the context of the FLSA liability, the factors considered in determining whether distinct entities constitute an integrated enterprise are 1) interrelation of operations; 2) centralized control of labor relations; 3) common management; and 4) common ownership or financial control.  *Skidmore v. Precision Printing & Packaging, Inc.,* 188 F.3d 606,616(5th Cir. 1999) (citing *Radio Union v. Broadcase Serv.*, 380 U.S. 255, 257, 85 S.Ct. 876, 13 L.Ed.2d 788 (1965).  Traditionally, the second of these four factors has been considered the most important.  *Id.* At 617.  The determination is fact intensive.  *Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002).

In the case at bar, plaintiffs have merely alleged that "defendants share interrelated operations, have common management, have identical ownership, and that same financial control." without setting forth actual facts or evidence in support of these conclusory allegations such as to justify their request that the court grant the motion for notice as to Centerfolds, Gold Cup, Trophy Club, Splendor, and Cover Girls. In fact, there is no interrelation of operations between the defendants such that notice should be granted

## F. Conclusion

Bases upon the foregoing, defendants ask the court to deny plaintiffs' motion for notice to class members as to all defendants or, in the alternative, to deny plaintiffs' motion for notice to class members as to Centerfolds, Gold Cup, Trophy Club, Splendor, and Cover Girls and limit the notice to class members to bartenders and waitresses employed by Treasures during the three year period prior to the date issuance of notice is approved.

## G. Prayer

WHEREFORE, defendants pray that plaintiffs' motion for notice to class members is denied and for all other relief to which they are entitled.

Respectfully submitted,

By: _/s/ Albert T. Van Huff_____
ALBERT T. VAN HUFF
Texas Bar No. 24028183
Southern District No. 26968
1225 North Loop West, Suite 640
Houston, Texas  77008
Tel. (713) 880-2992
Fax (713) 880-5297

ATTORNEY FOR   DEFENDANTS

---

as to Centerfolds, Gold Cup, Trophy Club, Splendor, and Cover Girls on the basis of single integrated business enterprise theory even as it applies to non-FLSA liability issues.  Each of these businesses has its own management team, its own location, its own liquor license, its own bank accounts, and its own federal tax identification number.  *See* Affidavit of Hassan Davari, attached as Appendix 8.  More importantly, and an issue completely unaddressed by plaintiffs, is that there is no centralized control of labor relations because each business has its own interviewing and hiring process, independent control over its relationship with its employees, and determines independently issues such as the percentage of tips to withhold from credit card charges.  *See* Davari Deposition Transcript, page 14, lines 22-23; page 25, line 9 - page 26, line 4; page 34, lines 17-21; page 40, line 25 - page 41, line 24; page 43, lines 1-20; page 66, lines 14-16; page 68, lines 18-21; page 76, line 22 - page 77, line 1; page 82, lines 3-10; and page 83, lines 5-71; attached as Appendix1; Affidavit of Hassan Davari, attached as Appendix 8.

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing document was forwarded to counsel for the parties via electronic filing on the 4th day of June, 2010.

 /s/ Albert T. Van Huff
ALBERT T. VAN HUFF