IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURA MCKNIGHT, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | Civil Action No. H-09-3345 |
| | § | |
| D. HOUSTON, INC. D/B/A | § | |
| TREASURES, ET AL., | § | |
| | § | |
| Defendants. | § | Jury Trial Demanded |

### DEFENDANTS' SUR-REPLY TO PLAINTIFFS' MOTION FOR NOTICE TO CLASS MEMBERS

TO THE HONORABLE LEE H. ROSENTHAL, UNITED STATES DISTRICT JUDGE:

Defendants D. Houston, Inc. d/b/a Treasures ("Treasures"), A.H.D. Houston, Inc. d/b/a Centerfolds ("Centerfolds"), D N.W. Houston, Inc. d/b/a Gold Cup ("Gold Cup"), D. Rankin, Inc. d/b/a Trophy Club ("Trophy Club"), D WG FM, Inc. d/b/a Splendor ("Splendor"), W.L. York, Inc. d/b/a Cover Girls ("Cover Girls"), and, in their individual capacities, Ali Davari and Hassan Davari, file their sur-reply to plaintiff's motion for notice to class members.

### A. Plaintiffs' FLSA Claims Fail Under *Meyers*

The theme of plaintiffs' case and the motion for notice to class members is that it is unlawful for an employer to include in the calculation of the percentage to be deducted from employee credit card tips the losses caused by charged customer obligations (including any attendant credited gratuities) which, for whatever reason, ultimately were not collectable. Plaintiffs are wrong.

An employer is permitted to withhold a percentage from an employee's credit card

tips based upon the discount rates contemporaneously exacted by the various implicated financial service providers and other cost factors (including losses caused by charged customer obligations (including any attendant credited gratuities) which, for whatever reason, ultimately were not collectable) which, on average, roughly compensate it for its overall expenditures made during a defined period in connection with liquidating charged tips for its employees.  *Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 553, fn13 (6th Cir. 1999).

In the case at bar, plaintiffs' own testimony confirms that it was the policy and practice of their employer (Treasures) to pay them their tips on credit card tabs in cash either at the end of their shifts or occasionally on the next business day if cash on hand was depleted due to the large volume of credit card tips that were paid to other waitresses and bartenders.[1]  By paying the tips at the end of every shift or on the next day business day, Treasures assumed the risk of credit card charges, including charged tips, that would later be uncollectible.  The evidence attached to defendants' response to the motion for notice to class members demonstrates that such uncollectible credit card charges at Treasures average approximately $46,600.00 per month.  The policy of providing immediate access to charged gratuity funds, which concomitantly deprives Treasures and the other defendants of the beneficial use of those advanced funds, and accrued interest thereon, during the interim settlement period is the exact same policy at issue in *Meyers*, where the court ruled that it is permissible for an employer to include uncollectible credit card charge

---

[1] Where tips are charged on a credit card, it is permissible for an employer to pay the tips due to the employee on the next business day.  *See* U.S. Department of Labor, Wage and Hour Division Field Operations Handbook ¶ 30d05(c)-(d).

2

obligations in the calculation of the percentage to be withheld from employees' credit card tips. *Id.*

The plaintiffs in this case say that defendants should absorb the fees and uncollectible credit card obligations since they allegedly recouped the fees and uncollectible credit card obligations from their 20% share of the dancers' income, from the dancers' door fees, because of an alleged 30 - 90 day waiting period for tips on larger tabs, and because waitresses and dancers are required to pay back in cash any amounts "charged back" on their tabs. These allegations are unsupported and fail to undermine the 4% or 5% withholding at issue and are insufficient to justify collective action treatment of this case.[2]

---

[2] With regard to the alleged 80% / 20% split between the exotic dancers and the corporate defendants in connection with dance income, the dancers are commissioned salespeople who retain 80% of their sales from dance income derived from their performances at the businesses, while the businesses retain 20% of their sales from dance income derived from their performances as profit. There is absolutely no relationship between this dynamic and the aggregate of the credit card companies' processing fees or the losses caused by charged customer obligations (including any attendant credited gratuities) which, for whatever reason, ultimately were not collectable. Plaintiffs' factually unsupported and conclusory allegation that "the 'credit card charge backs' are covered by the millions of dollars collected by defendants on the '$5 per lap dance surcharge' added to each patrons' tab for dances charged on a credit card" is akin to arguing that customer entry fees paid by credit cards or that net profits from the sale of liquor attributable to credit cards should cover the credit card charge backs, all of which conflict with the general principles set forth in *Meyers*.

With regard to the alleged policies regarding a 30 - 90 day waiting period and waitresses paying back the clubs for tips on charged back tabs, Turner, a bartender, testified that during her seven years at Treasures she was never required to pay for credit card charge backs and that all of her tips were paid to her in cash at the end of every shift. Baker, a bartender who only has on three months of employment within the relevant period, testified that during his eleven years at Treasures his tips were always paid to him at the end of his shift and that he "very rarely" was required to pay back his tips on credit card charge backs.

Similarly, McCray, a waitress, testified at her deposition that during her seven years at Treasures her tips were held for a period of time on only five tabs, that she was not paid on charged back tabs on only two out of these five tabs, and that all of these instances were prior to 2007. Moreno, a waitress, testified that during her four years at Treasures she was always paid her credit card tips either at the end of her shift or the next day if the club ran out of cash due to the high volume of credit card transactions and associated tips that needed to be liquidated. Freedman, a waitress, testified that during her two years at Treasures there were only two occasions where she was required to pay back the tips on disputed tabs and that she would sometimes receive her cash tips the following day due if the club ran out of cash due to the high volume of credit card transactions and associated tips that needed to be liquidated. McKnight, a waitress, testified that during her seven years at Treasures she was never required to pay the club back

3

None of the cases cited by plaintiffs on page 8 of their reply are relevant to the matter at hand because they do not discuss FLSA violations in the context of withholding a percentage from an employee's credit card tips.  Unlike *Bernal*, there is no evidence in the case at bar that defendants had a policy or practice of deducting losses from cash register shortages and unpaid tabs directly from employees' paychecks or nightly tips.  Unlike *Mayhue*, there is no evidence in the case at bar that the defendants had a policy or practice of retaining tips to pay for cash register shortages.  Unlike *Brennan*, there is no evidence in the case at bar that defendants had a policy or practice of deducting losses from shortages or walkouts directly from employees' paychecks or tips.  Unlike *Chisolm*, there is no evidence in the case at bar that defendant has a policy or practice of charging employees a glass-breakage fee.  Instead, the evidence in the case at bar is that defendants withheld either 4% or 5% from its employees credit card tips based upon the discount rates contemporaneously exacted by the various implicated fanancial service providers and other cost factors (including uncollectible credit card charges) which, on average, roughly compensated them for their overall expenditures made during a defined time period in connection with liquidating charged tips for its employees, which is

---

for tips on a charged back tab and that there were only three instances that she did not receive her tips in cash on credit card tabs at the end of her shift and that on each these occasions she was subsequently paid the tips in cash.

   The aforementioned testimony of the plaintiffs fails to demonstrate a common policy or plan regarding a 30 - 90 day waiting period and waitresses paying back the clubs for tips on charged back tabs.  Instead, plaintiffs have testified to facts that are isolated, sporadic, distinct and specific them individually, and that are purely personal to each of them and that were not a result of any generally applicable rule, policy, or practice.  Therefore, plaintiffs' argument regarding a 30 - 90 day waiting period and waitresses paying back the clubs for tips on charged back tabs fails as it is insufficient to satisfy the similarly situated inquiry in connection with the motion for notice to class members.

specifically permissible under *Meyers*.

The *Reich* case cited by plaintiffs is distinguishable from the case at bar because that case dealt with a scenario whereby an employer withheld 20% of tips paid to waitresses by credit card but was unable to show the reasonableness of the percentage withheld. *See Reich v. Priba Corp.*, 809 F.Supp. 586, 595 (N.D. Tex. 1995). Unlike the defendant in *Reich*, the defendants in the case bar have shown the reasonableness of the 4% or 5% withholding in accordance with *Meyers*. Similarly, the *Ash* case cited by plaintiffs is distinguishable from the case at bar because that case dealt with tip deductions where the credit card companies had reimbursed the credit card transaction fees to the employer and the fees were not then given back to the servers. There is no such allegation in the case at bar, so *Ash* is inapplicable.

## B. Plaintiffs' Enterprise Theory Claims Fail Under *Patel*

Plaintiffs claim that defendants are an integrated enterprise and that notice is proper as to employees of entities that never employed any of the plaintiffs. Plaintiffs are wrong.

In *Patel*, the Eleventh Circuit considered whether individual entities making up an FLSA enterprise should be jointly and severally liable for another entity's employees solely because they were members of the enterprise. *Patel v. Wargo*, 803 F.2d 632, 635. The court recognized that "a showing that two entities constitute an enterprise can be the first step in establishing coverage under the FLSA, since coverage is determined in part by an annual dollar volume test." *Id.* (citing 29 U.S.C. § 206(a)). In addressing the question of joint and several liability, the court first considered that 29 U.S.C. § 206(a) imposes an obligation on each employer in an enterprise to appropriately pay "each of *his* employees." *Id.* (emphasis in the original). Next, the court looked to the legislative history of the statute,

concluding that the "legislative history clearly states the congressional purpose to expand coverage of the Act, *i.e.*, to lump related activities together so that the annual dollar amount volume test for coverage would be satisfied," but that "[t]he legislative history contains no hint that Congress intended to make employers liable for the employees of a separate entity in the enterprise." *Id.* at 636. Therefore, the court held that "the enterprise analysis is different from the analysis of who is liable under the FLSA." The finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-employee relationship. *Id.* at 637.

Based upon the language of *Patel*, plaintiffs' motion for notice as to the defendants that did not employee any of the plaintiffs during the relevant period should be denied. *See also Alvarez v. 9er's Grill*, 2009 WL 2252243 (S.D. Tex. 2009).

### C. Prayer

WHEREFORE, defendants pray that plaintiffs' motion for notice to class members is denied and for all other relief to which they are entitled.

Respectfully submitted,

**MONSAUGEN & VAN HUFF, P.C.**


By: /s/ Albert T. Van Huff
ALBERT T. VAN HUFF
Texas Bar No. 24028183
Southern District No. 26968
1225 North Loop West, Suite 640
Houston, Texas 77008
Tel. (713) 880-2992
Fax (713) 880-5297

ATTORNEY FOR DEFENDANTS


CO-COUNSEL:

LAUREN M. SERPER
**LAW OFFICES OF LAUREN M. SERPER, P.C.**
Texas Bar No. 18032100
Southern District No. 7334
3405 Edloe, Suite 200
Houston, Texas 77027
Tel. (713) 278-9398
Fax (713) 785-0808


**Certificate of Service**

The undersigned hereby certifies that a true and correct copy of the foregoing document was forwarded to counsel for the parties via electronic filing on the 23rd day of June, 2010.

/s/ Albert T. Van Huff
ALBERT T. VAN HUFF