**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LAURA MCKNIGHT, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-09-3345 |
| | § | |
| D. HOUSTON, INC., *d/b/a* TREASURES, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This is a suit under Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* The plaintiffs are former servers and bartenders at two adult entertainment clubs in Houston. The defendants are the corporations that operate these two clubs, four corporations that operated four other clubs, and two individuals who own the holding company that is the common owner of the six corporate defendants. The plaintiffs allege that these defendants violated the FLSA by unlawfully withholding from the servers and bartender tips paid by credit card a 4- or 5-percent charge for credit-card processing costs. The plaintiffs allege that this is a common policy for servers and bartenders at each of the six clubs. The plaintiffs allege that this and other tip deductions taken by the defendants exceed the credit-card processing costs and illegally diminish their tip income. The six corporations that operate the strip clubs, and their allegedly common owners, are sued on the basis of a joint-employer or single-integrated-business theory of liability. (Docket Entry No. 1).

The plaintiffs have moved for issuance of notice to potential class members, which requires conditional certification of an opt-in class. (Docket Entry No. 32). The defendants have responded, (Docket Entry No. 34), the plaintiffs have replied, (Docket Entry No. 38), and the defendants have

surreplied, (Docket Entry No. 39), and filed a supplemental response, (Docket Entry No. 40).  The plaintiffs have also moved for equitable tolling of the statute of limitations until the date of the court's ruling on conditional certification.  (Docket Entry No. 44).  The defendants have responded. (Docket Entry No. 45).  Counsel also presented argument on some of the issues at a hearing before the court.

This court has considered the pleadings; the motions, responses, reply, surreply, and supplemental response; counsels' argument; the record; and the applicable law.  Based on this review, the motion for equitable tolling is denied and the plaintiffs' motion for conditional certification and issuance of notice to potential class members is granted as to a class defined as the bartenders and who worked at Treasures and Centerfolds from October 15, 2007 until the present. By **December 31, 2010**, the defendants must provide the plaintiffs with the names, current or last known addresses and telephone numbers, and dates of employment of the members of this class. By the same date, the parties must submit a proposed notice for the court to review.  The parties must appear on **January 12, 2011, at 2:00 p.m.** for a status conference.  The reasons for these actions are explained below.

## I.      Background

### A.      The Parties

The six plaintiffs worked at two Houston strip clubs, Treasures and Centerfolds.  All plaintiffs worked for Treasures: Andrew Baker from February until April 2007; Rachael Freedman from February 2007 until May 2008; Kimberly McCray from February until June 2007 and August until October 2008; Laura McKnight from February 2007 until April 2009; Margo Moreno from

February 2007 until March 2009; and Trisha Turner from February 2007 until December 2008.[1] McCray also worked at Centerfolds from June 2007 until August 2008.[2]  Baker was a bartender paid $30.00 plus tips per shift.  The other five named plaintiffs were servers paid $2.13 per hour plus tips.[3]

D. Houston, Inc. operates Treasures; A.H.D. Houston, Inc. operates Centerfolds.  D. Texas Investments, Inc., a holding company that is not a defendant in this suit, owns D. Houston and A.H.D. Houston, along with four other corporate entities that operate strip clubs in the city: D.N.W. Houston, Inc., which operates Gold Cup; D. Rankin, Inc., which operated Trophy Club until it closed on October 9, 2009; D WG FM, Inc., which operated Splendor until it closed on January 17, 2007; and W.L. York, Inc., which operates Cover Girls.  None of the plaintiffs worked at a strip club owned or operated by any defendant other than Treasures or Centerfolds.

Ali and Hassan Davari run the clubs.  Although the complaint alleges that the corporate defendants own the companies that operate the clubs, Ali Davari testified in his deposition that the companies are wholly owned by D. Texas Investments, Inc.

## B.    The Alleged FLSA Violations

The plaintiffs filed suit on October 15, 2009.  In the complaint, they allege that they participate "in an invalid tip pool, whereby servers must pay a flat percentage of their tips on every

---

[1]  *See* Docket Entry No. 34, App. 2, McKnight Depo. at 8–9; App. 3, Turner Depo. at 8–10; App. 4, Baker Depo. at 8–11; App. 5, Freedman Depo. at 10; App. 7, Moreno Depo. at 7; App. 6, McCray Depo. at 16, 25.

[2]  *Id.*, App. 6, McCray Depo. at 16, 25.

[3]  *Id.*, App. 2, McKnight Depo. at 8–9; App. 3, Turner Depo. at 8–10; App. 4, Baker Depo. at 8–11; App. 5, Freedman Depo. at 10; App. 7, Moreno Depo. at 7; App. 6, McCray Depo. at 16, 25.

transaction involving a credit card.  This percentage exceeds the actual cost to the Defendants of the credit card transactions." (Docket Entry No. 1., ¶ 3).  The plaintiffs alleged a violation of 29 U.S.C. § 203(m), which addresses employees whose compensation includes tips.  (*Id.* ¶¶ 3, 31).

The complaint alleges that the actual costs to the defendants of the credit-card transactions are covered by the $5 fee charged for each lap dance that is paid for by a credit card.  (*Id.* ¶ 24).  Lap dances paid for in cash cost only $20; lap dances paid for by credit card cost $25, out of which the dancer keeps only $20.  (*Id.*)  Alternatively, the complaint alleges that the flat 5 percent withheld from their tips exceeds the costs of the credit-card transactions.  (*Id.*).  The complaint alleges that the defendants "have not made a good faith effort to comply with the FLSA" and that they have "willfully, and/or with reckless disregard carried, and . . . continue[] to carry, out this illegal pattern or practice regarding credit card charges.  (*Id.* ¶ 25).  These practices "continue to be uniformly enforced and . . . affect all servers and/or bartenders employed by Defendants."  (*Id.* ¶ 26).  The complaint defines the class as "[a]ll current and former servers and bartenders employed by defendants at any time during the time period of October 15, 2006 to the present who paid a percentage of their tips to any Defendant allegedly to cover credit card charge fees."  (*Id.* ¶ 28).  The plaintiffs filed their motion for issuance of notice to potential class members on May 5, 2010, supported by affidavits from the plaintiffs.  (Docket Entry Nos. 29, 30, 32).

The defendants responded by arguing that there is no basis for conditionally certifying an opt-in class or issuing notice because: (1) there are no allegations of a common policy or plan that violates the FLSA; (2) the plaintiffs worked at no club other than Treasures and Centerfolds; (3) the employee who worked at Centerfolds did so for only two months; (4) the defendants are neither joint

employers nor a single business enterprise.  The defendants submitted excerpts of the plaintiffs' depositions and deposition testimony and an affidavit from Davari.  (Docket Entry Nos. 34–37).

The plaintiffs replied, attaching copies of written policies governing pregnancy, tanning, and nonfraternization to support their joint-employer and single-integrated-enterprise arguments.  These policies were given to McKnight and she was required to sign  them in connection with her work at Treasures.  The policies referred to other strip clubs owned by D. Texas Investments.  (Docket Entry No. 38).

In a footnote in their brief, the defendants objected to the plaintiffs' affidavits as inaccurate or inconsistent with the plaintiffs' deposition testimony.  (Docket Entry No. 34 at 2 n.1).  The defendants say that the affidavits incorrectly name the Davaris as the strip clubs' owners, when the clubs are actually owned by a holding company.  The defendants also assert that the affidavits differ from the depositions in  details of how the clubs handled tips.  These objections, and the evidence that is challenged, have no bearing on this court's resolution of the pending motions.  Even assuming the defendants' objections are proper and the challenged evidence should be disregarded, that would not change the outcome of this court's ruling on conditional certification and notice, given the low burden on the plaintiffs to show a basis for conditional certification.  As a result, the objections are moot.

The motions for conditional certification and issuance of notice, and for equitable tolling of limitations, are addressed below.

## II.     The Motion for Notice

### A.      The Applicable Law

The FLSA requires employers to pay employees a legally prescribed minimum hourly wage. 29 U.S.C. § 206(a)(1).  If certain conditions are satisfied, an employer may "pay tipped employees an hourly rate less than the federal minimum wage, by allowing them to credit a portion of the actual amount of tips received by the employee against the required hourly minimum wage." A "tipped employee" is an employee "engaged in an occupation in which he [or she] customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t); *see Chung v. New Silver Palace Rest., Inc.,* 246 F. Supp. 2d 220, 228 (S.D. N.Y. 2002).  Under federal law, an employer is eligible for this "tip credit" if: (1) the employer has informed the tipped employee of statutory requirements related to the tip credit; and (2) "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m); *see New Silver Palace*, 246 F. Supp. 2d at 228; *Sorensen v. CHT Corp.*, Nos. 03 C 1609, 03 C 7362, 2004 WL 442638, at * 1 (N.D. Ill. Mar. 10, 2004) (quoting 29 U.S.C. § 203(m)).  These prerequisites are strictly construed.  *See New Silver Palace*, 246 F. Supp. 2d at 229.

The plaintiffs were part of a tip pool.  Some of their tips were paid by credit card.  "Where tips are charged on a credit card, the tips due the employee must be paid to the employee not later than the next regular pay day and may not be held by the employer while the employer is waiting to be reimbursed by the credit card company.  However, where a credit card charge is uncollectible, . . . an employer [need not] pay an employee the amount of tips specified on such credit card slips. Instead, the employer may recover from a tipped employee those tips that have been paid to the employee when the credit card charge is uncollectible; however, such recovered tips may not reduce the tips retained by the employee below the amount of the tip credit claimed."  Wage-Hour Opinion

6

Letter FLSA2006-1 (Jan. 13, 2006) (citations omitted); *accord Myers v. Copper Cellar Corp.*, 192 F.3d 546, 553 (6th Cir. 1999).

Section 216(b) of the FLSA creates a cause of action for employees against employers. 29 U.S.C. § 216(b). Section 216(b) provides:

> An action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*Id.* Section 216(b) establishes an opt-in scheme under which plaintiffs must affirmatively notify the court of their intention to become parties to the suit. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). District courts have discretion in deciding whether to order notice to potential plaintiffs. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989); *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 808 (S.D. Tex. 2003).

Notice does not issue unless a court conditionally certifies the case as a collective action. Courts recognize two methods to determine whether to authorize notice to similarly situated employees advising them of their right to join an FLSA collective action. These methods are the two-step *Lusardi* approach and the class action–based *Shushan* approach. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D. N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990). Most courts, including district courts in this circuit, use the "two-step *ad hoc* approach" as the preferred method for the similarly situated analysis rather than the Rule 23 requirements. *See, e.g.*, *Maynor v. Dow Chemical*, 671 F. Supp. 2d 902, 930–31 (S.D. Tex. 2009); *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004) (stating that most courts have employed or implicitly approved the two-step method); *Basco v. Wal-Mart Stores Inc.*, Civ.

A. No. 00-3184, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004); *Villatoro v. Kim Son Restaurant,*
*L.P.*, 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003); *see also Grayson v. K Mart Corp.*, 79 F.3d 1086,
1096 n.12 (11th Cir. 1996) (noting that "the requirements for pursuing a § 216(b) class action are
independent of, and unrelated to, the requirements for class action under Rule 23"); *Mooney*, 54 F.3d
at 1217 (declining to mandate either theory); *LaChapelle v. Owens-Ill., Inc.*, 513 F.2d 286, 288 (5th
Cir. 1975) (finding a fundamental difference between Rule 23 class actions and FLSA collective
actions).

"*Lusardi* and its progeny are remarkable in that they do not set out a definition of 'similarly
situated,' but rather they define the requirement by virtue of the factors considered in the [two-stage]
analysis." *Mooney*, 54 F.3d at 1213. The first step of analysis is the "notice stage" in which the
district court decides whether to issue notice to potential class members. *See id.* at 1213–14. The
court's decision at this stage is often based only on the pleadings and affidavits that have been
submitted. *Id.* "Because the court has minimal evidence, this determination is made using a fairly
lenient standard, and typically results in 'conditional certification' of a representative class" that
provides potential class members with notice and the opportunity to opt in. *Id.* at 1214 n.8. Even
this lenient standard appears to require substantial allegations that potential members "were together
the victims of a single decision, policy, or plan." *Id.* (citing *Sperling v. Hoffman-La Roche, Inc.*, 118
F.R.D. 392, 407 (D. N.J. 1988)). At this stage, a plaintiff must make a minimal showing that: (1)
there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those
aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and
defenses asserted; and (3) those individuals want to opt in to the lawsuit. *See Prater v. Commerce*
*Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007); *Simmons*

*v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007). A factual basis for the allegations is needed to satisfy the first step. *See Hall v. Burk*, No. Civ. 301CV2487H, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (stating that "[u]nsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden."); *see also Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983).

At the first stage, there must be a showing of "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003) (citing *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 416 (D. Or. 2002)); *see also Basco*, 2004 WL 1497709, at *5 (quoting *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988) (stating that certification is appropriate when some factual nexus binds the named plaintiffs and potential class members as victims of a particular alleged policy or practice)). "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron*, 242 F. Supp. 2d at 1104 ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing that the violations were more than sporadic occurrences.").

If a court conditionally certifies a class, the action proceeds as a collective action during discovery. *See Mooney*, 54 F.3d at 1214. The second stage typically occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally-certified class. *See id.*; *Lusardi*, 118 F.R.D. at 359. At that point, the court makes a factual determination as to whether there are similarly situated employees. *Id.* If the district court finds that the claimants are similarly

9

situated, the collective action may proceed.  *See Mooney*, 54 F.3d at 1214; *Basco*, 2004 WL 1497709, at *3.  If the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice and the original plaintiffs proceed on their individual claims.  *England*, 370 F. Supp. 2d at 508.

Neither stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations. *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 893 (N.D. Iowa 2008) ("[W]hether at the first or second step in the § 216(b) collective action certification process, plaintiffs need not prove the merits of their claim.  That is, plaintiffs do not have to show that the employer actually violated the FLSA."); *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1240–41 (M.D. Ala. 2008) ("To the extent that Defendant would now argue the merits of the case, such debates are premature and inappropriate."); *Lynch v. United Svcs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D. N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Barrus v. Dick's Sporting Goods, Inc.*, No. 05-CV-6253, 2006 WL 3373117, at *4 (W.D. N.Y. Nov. 3, 2006); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D. N.Y.2005) ("The focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated."); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D. N.Y.1997) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here."); *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 680 (D. Colo.1997) ("[W]hether plaintiffs can meet their burden in the liability phase . . . is irrelevant to the question of § 216(b) certification").

This case is at the "notice stage" of the *Lusardi* analysis.  The issue is conditional certification.  Ordinarily, at this stage, the parties have presented only affidavits and have often conducted no discovery.  In some cases, the parties have taken some discovery and have submitted the results of that work.  *See, e.g.*, *Basco*, 2004 WL 1497709, at *3.  In a few cases, the parties have taken extensive discovery, justifying application of the more stringent stage-two standard.  *See e.g.*, *Pfohl v. Farmers Ins. Grp.*, No. CV03-3080 DT (RCX) , 2004 WL 554834, at *2–3 (C.D. Cal. Mar. 1, 2004).  This case is in the middle category; the parties have deposed the plaintiffs and Hassan Davari, submitted deposition excerpts, and submitted other documents.  But there remains significant additional discovery to be completed, including discovery into the nature and extent of the relationships among the defendants.  Under this court's scheduling order, the parties have until February 11, 2011, to complete discovery.  (Docket Entry No. 23).  The fact that some discovery has been conducted does not increase the plaintiffs' burden at this first, conditional certification stage to the more onerous standard that applies at the second, decertification stage.  That standard is only appropriate "after discovery is largely complete and the matter is ready for trial."  *Mooney*, 54 F.3d at 1214.

The alleged violation is withholding an excessive amount of tips from the tip pool to cover the costs of credit-card transactions.  The defendants dispute whether the plaintiffs can show any of the three required elements for conditional certification because the depositions and affidavits do not show a common policy relating to withholding tips and do not show that any policy was illegal.  Alternatively, the defendants argue that the conditional certification and issuance of notice should be limited to bartenders and servers at Treasures, or at most, Treasures and Centerfolds, because

there is an insufficient basis to find that the other four clubs were joint employers or an integrated enterprise.

### B.    Analysis

The plaintiffs have met their light burden to show that there are other aggrieved Treasures servers and bartenders subject to a common policy on withholding tip income.  The defendants acknowledge that Treasures withheld a flat amount from the tip pool to cover the costs of processing credit-card payments and charge-backs for amounts put on credit cards but not paid by the card holder.  Although the defendants have presented evidence that the five percent withheld from the tips paid by credit card covers the average cost of credit-card processing fees and charge-backs, (Docket Entry No. 37, Ex. 6, Aff. of Hasan Davari ¶ 7), the plaintiffs have submitted evidence showing that the flat five percent exceeds those costs.  The plaintiffs testified in their depositions that several individual employees participating in the tip pool have been charged individually for charge-backs, which is inconsistent with the defendants' claim that the charge-backs may be included in the five percent fee.  (*See, e.g.*, Docket Entry No. 27, Ex. 1, McKnight Decl. at 2; Ex. 2, Turner Decl. at 2; Ex. 3, Baker Decl. at 2; Ex. 5, McCray Decl. at 2).  The plaintiffs also testified that they were required to give 10 percent of their tips to managers, who were not proper recipients of tips.  (*See, e.g.*, Docket Entry No. 37, Ex. 2, McCray Dep. at 33).

The record is sufficient to meet the showing required at this first, conditional certification stage.  It is not appropriate at this early stage to require the plaintiffs to present evidence that would be required to survive a motion for summary judgment.  *See, e.g.*, *Bouaphakeo*, 564 F. Supp. 2d at 893.  Many courts have stated that putative class members need only show that they were affected by a common policy, plan, pattern, or practice to satisfy the "similarly situated" inquiry.  *See, e.g.*,

*O'Brien v. Ed Donnelly Enters., Inc.*, No. 2:04-CV-00085, 2006 WL 3483956, at *3 (S.D. Ohio Nov. 30, 2006) (citations omitted) ("Plaintiffs must demonstrate that the Defendants had a common policy or plan in violation of the FLSA that negatively impacted the original and opt-in Plaintiffs."); *England*, 370 F. Supp. 2d at 507 (a court may refuse to allow plaintiffs to proceed collectively if the action arises from circumstances purely personal to the plaintiffs and not from any generally applicable rule, policy, or practice); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91, 95–97 (S.D. N.Y. 2003) (citations omitted) (a plaintiff must allege a common policy or plan and establish a sufficient factual nexus between his situation and the situation of the proposed classed members); *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1139 n.6 (D. Nev. 1999) ("In order to be similarly situated, the action must not be distinct and specific to individual plaintiffs; rather, there must be some general policy or practice."). A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists. *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007). A common policy is not necessarily required and uniformity is clearly not necessary. "[T]he 'similarly situated' requirement of § 216(b) is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance) [,so] a unified policy, plan, or scheme of discrimination may not be required to satisfy . . . § 216(b)." *Grayson*, 79 F.3d at 1095; *see also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534–35 (S.D. Tex. 2008) (collecting cases). In the present case, all the plaintiffs presented evidence that the credit-card tip policy at Treasures was applied to them and there is evidence that it was generally applied to other bartenders and servers. There is a sufficient basis in the record to find a common policy, satisfying the lenient burden imposed at this stage of the certification analysis.

Courts have refused to permit FLSA suits to proceed as collective actions if the

13

individualized inquiries required would eliminate "the economy of scale envisioned by the FLSA collective action procedure." *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1275 (M. D. Ala.2004); *see also Donihoo v. Dallas Airmotive, Inc.*, Civ. A. No. 3:97-CV-0109-P, 1998 WL 91256, at *1 (N.D. Tex. Feb. 23, 1998) ("[A]n inquiry into the employee's specific job duties . . . is not appropriate in a class lawsuit under Section 216(b)."). But in this case, such an individual inquiry does not appear to be required. The plaintiffs seek a collective action consisting solely of other bartenders and servers who were part of the tip-pooling arrangement at the two clubs where they worked. The proposed class, at least as it extends to Treasures and Centerfolds employees, is similarly situated.

The defendants also challenge the validity of the plaintiffs' legal theory of liability under the FLSA, as opposed to the sufficiency of the evidence to support it back it. The defendants argue, and cite cases stating, that a portion of the tips paid on credit card transactions may be withheld if the amounts do not exceed the processing costs to the employer for those transactions. (*See, e.g.*, Docket Entry No. 34 at 10 ("It is well established that an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip, without surrendering its partial set-off against minimum wages under the FLSA." (citing *Myers*, 192 F.3d at 553; *Bollenberg v. Landry's Rest.*, Civ. A. No. H-03-68, 2005 WL 2121810, at *3–4 (S.D. Tex. 2005)))). The parties have submitted conflicting evidence on whether the 4 or 5 percent withheld by the defendants exceeded the average costs of processing the credit-card payments and charge-backs. In his affidavit, Hassan Davari stated that the 5 percent withholding at Treasures roughly covers the transaction costs attributable to the credit-card tips and the tips that the club is unable to collect from the credit-card companies. The plaintiffs contend that other

14

sources cover the transaction costs and charge backs, including the $5 extra charged for lap dances paid with credit cards and demands for payment of charge-backs outside the charges to the tip pool. At this early stage, in a motion for conditional certification, it is not appropriate to require the plaintiffs to produce evidence sufficient to survive summary judgment or to otherwise test the merits beyond the light burden of production to show potential class members are similarly situated. *Bouaphakeo*, 564 F. Supp. 2d at 893; *Longcrier*, 595 F. Supp. 2d at 1240–41; *Lynch*, 491 F. Supp. 2d at 368; *Barrus*, 2006 WL 3373117, at *4; *Young*, 229 F.R.D. at 54; *Hoffmann*, 982 F. Supp. at 262; *Vaszlavik*, 175 F.R.D. at 680.  The grant of the plaintiffs' motion for notice to the potential class members is without prejudice to the defendants' ability to urge dismissal under the rules of civil procedure that are intended to test the merits of the claims and defenses.

The third *Lusardi* question is whether evidence shows that other aggrieved employees would want to join the class.  "[A] plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit."  *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1165 (D. Minn. 2007).  "Affidavits from potential class members affirming their intention to join the suit are ideal for an analysis of whether 'the putative class members were together the victims of a single decision, policy, or plan.'"  *Simmons*, 2007 WL 210008, at *9 (quoting *Mooney*, 54 F.3d at 1214 n.8); *see also D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995) (affidavits are advisable so an employer will "not be unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense").  "However, affidavits per se are not required and a named plaintiff may submit some other form of evidence that the additional aggrieved persons exist and want to join the suit."  *Simmons*, 2007 WL 210008, at *9.  "[A] district court should satisfy itself that there are other

15

employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Id.* (quoting *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1568 (11th Cir. 1991)) (internal quotations omitted). "It is conceivable that in certain circumstances, such as when an employee worked for an employer for only a short period of time, it might be appropriate to permit some discovery as to the identity of other similarly situated employees," but "an FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join the action." *Parker*, 492 F. Supp. 2d at 1166, 1167 n. 6.  According to Baker's sworn declaration,

> There are a lot of people who worked for the Defendants over the last three years, and while I was there many of us would talk about (among other things) whether it was fair or legal for the club to keep money from our tips.  I know there are other people affected by this policy that would be interested in knowing about this case and who would consider participating.

(Docket Entry No. 27, Ex. 3, Baker Decl. at 3).  This litigation has already attracted six plaintiffs. *See Prater*, 2007 WL 4146714, at *8 (three plaintiffs' presence in lawsuit showed interest in the litigation, even in the absence of affidavits).  The plaintiffs have produced sufficient evidence to show that other aggrieved bartenders and servers at Treasures would want to join the collective action.

The defendants argue that even if conditional certification is appropriate for the Treasures bartenders and servers, the court should not extend certification beyond those employees.  All the plaintiffs worked at Treasures or Centerfolds.  The plaintiffs have devoted a substantial portion of their briefing to showing that the strip clubs operated by the defendants operate as a single business entity to permit certification of the class to extend to all current and former employees of six clubs, not just Treasures and Centerfolds.  The defendants have insisted that the clubs are independent

entities not properly joined in a collective action.  "Courts have held that it is appropriate to issue notice to potential class members when there is some evidence that employers are related, delaying the determination whether the employers actually have a joint-employment relationship.   In instances where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination." *Manning v. Goldbert Falcon, LLC*, Civ. A. No. 08-3427 (JEI), 2010 WL 3906735 (D. N.J. Sept. 29, 2010) (citing cases); *see also id.* (conditionally certifying a plaintiff class of employees of "three separate but related employers" based on evidence of a "common pay policy"); *Aguilar v. Complete Landsculpture, Inc.*, Civ. A. No. 3:04 CV 0776 D, 2004 WL 2293842 (N.D. Tex. Oct. 7, 2004) (noting that " if discovery shows that certain plaintiffs are not similarly situated due to differences in employers, the court can decertify the class or can create subclasses" (citing *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 484 (E.D. N.Y. 2001))); *Alba v. Loncar*, No. 3:03-CV-1295-M-(BH), 2004 WL 1144052, at *5 (N.D. Tex. May 20, 2004) (certifying a class consisting persons "employed by one of Defendants, at any time since June 23, 2000"); *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 947 (M.D. Fla. 1994) (conditionally certifying a plaintiff class employed by multiple employers working within the same truck terminal).        The record contains significant evidence that the strip clubs' operating corporations are related.  The strip clubs are owned by a common holding company, and they share executives and other administrative staff.  (Docket Entry No. 35, App. 1, Davari Depo. at 12–13; App. 8, Davari Aff. ¶ 6).  McKnight signed pregnancy, nonfraternization, and tanning bed policies listing Treasures, where she worked, and other defendants.  (Docket Entry No. 38, Exs. B–D).  The strip clubs also advertise together.  (*Id.* Ex. A).

The plaintiffs must provide some evidence that a similar policy or approach to tips is used at the other commonly owned strip clubs to make conditional certification of a broader class of bartenders and servers who worked at other clubs.  *See Trinh v. J.P. Morgan Chase & Co.*, No. 07-CV-1666 W(WMC), 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008) ("At most, Plaintiffs' affidavits establish a few similarities in training and compensating rookie sub-prime loan officers in the singular Southern California market. Plaintiffs provide no real evidence, beyond their own speculative beliefs, suggesting that all JPMorgan loan officers across the country, regardless of location or experience, receive the same compensation and are required to work in the same manner."); *Sheffield*, 211 F.R.D. at 417 (denying certification of a class made up of employees of parent corporation and its subsidiaries and affiliates throughout the United States, because factual differences existed between overtime pay practices and job descriptions in different units and subsidiaries); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362–63 (M.D. Ala. 1999) (refusing to include in a class employees of chains other restaurants when the evidence of FLSA violations was limited to a single restaurant); *Brooks v. Bellsouth Telecomms.*, 164 F.R.D. 561, 566–67 (N.D. Ala. 1995) (refusing to certify a class consisting of management employees in "any unit, division or subsidiary" of the employer, when the proffered evidence was insufficient to support the allegation of an overarching discriminatory pattern); *Tucker*, 872 F. Supp. at 948 (finding that the plaintiffs had failed to show that employees working at truck terminals other than the terminal where the named plaintiffs worked were similarly situated to those plaintiffs).  Although Davari maintained that the clubs lacked a common policy, he acknowledged during his deposition that all the active clubs—Treasures, Centerfolds, Gold Cup and Splendor—collect between 4 and 5 percent of

bartender and server tips charged to credit cards.  (Docket Entry No. 36, App. 1, Davari Depo. at 37–41).  There is sufficient evidence of a common policy among the clubs.

The record supports providing notice to bartenders and servers at Centerfolds as well as Treasures.  McCray was a server at Centerfolds and she has attested to her experience and her observations of others' experience there.  The plaintiffs have not provided affidavits that other Centerfolds employees would want to join this litigation, but this does not defeat conditional certification.  *See, e.g.*, *Lima*, 493 F. Supp. 2d at 799–800 (E.D. La. 2007) (noting that while the plaintiffs did not provide any affidavits of similarly situated employees wishing to opt in, "[i]t seems appropriate to certify the collective action at this time and revisit the question later after some discovery").

Unlike Centerfolds and Treasures, who have at least one employee in this lawsuit, none of the other clubs have any current or former employees participating in this litigation.  *See Lucas v. BMS Enters., Inc.*, Civ. A. No. 3:09-CV-2159-D, 2010 WL 2671305, at *3 n.7 (N.D. Tex. July 1, 2010) (declining to include in a class employees of a related employer when none of the plaintiffs worked for the related employer, and clarifying that "*Aguilar* does not suggest that plaintiffs may state an FLSA claim against corporate entities whom the plaintiffs can merely show will be *some class member's* employer, but not *their* employer" (emphasis in original)).  The plaintiffs have presented no basis to show that there are any employees of the other clubs who may be interested in opting in.  "Others' interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants in a collective action."  *Simmons*, 2007 WL 210008, at *9 (citing *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999)); *Detho v. Bilal*, Civ. A. No. H-07-2160, 2008 WL

1730542, at *4 (S.D. Tex. Apr. 10, 2008) (declining to include in the class persons employed at locations other than the location at which the named Plaintiffs were employed).   Even when a common owner has only a few small locations, there must be at least some minimal showing that employees at other locations are interested in joining the suit.  *See Detho*, 2008 WL 1730542, at *6 (refusing certification for employees at a two-store chain when only evidence that employees at the other location were interested was the plaintiff's affidavit stating that she "'believes' there are other employees 'who may be interested in joining a collective action to recover for unpaid overtime compensation'" (quoting the affidavit)) (citing *Prater*, 2007 WL 4146714, at *8–9; *Parker*, 492 F. Supp. 2d at 1165; *Simmons*, 2007 WL 210008, at *9).   In the absence of such a minimal showing, this court concludes that notice to employees of other strip clubs is not proper at this point.   On the present record, notice is appropriate as to former and current Treasures and Centerfold employees.  *See Harper*, 185 F.R.D. at 363–65 (allowing notice to a portion of the proposed class when the evidence did not support notification for the entire proposed class).   This ruling does not preclude the plaintiffs from timely supplementing the record to provide a basis to include present or former employees of the other clubs in the collective action.

## III.   The Motion for Equitable Tolling

The plaintiffs also urge this court to apply equitable tolling to the statute of limitations.   The filing of a class action under Federal Rule of Civil Procedure 23 tolls limitations for putative class members.  *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 345 (1983) (citing *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)).   Tolling is justified because "[o]therwise, class members would be led to file individual actions prior to denial of class certification, in order to preserve their rights.   The result would be a needless multiplicity of actions—precisely the situation that Federal

Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." *Crown*,

462 U.S. at 345. Collective actions under the FLSA are not controlled by Rule 23. *See, e.g.,*

*LaChapelle*, 513 F.2d at 288–89. Unlike Rule 23 class actions, plaintiffs must "opt in" to a FLSA

collective action. In *LaChapelle*, the court explained the significance of this difference for

limitations:

> There is a fundamental, irreconcilable difference between the class
> action described by Rule 23 and that provided for by FLSA § 16(b).
> In a Rule 23 proceeding a class is described; if the action is
> maintainable as a class action, each person within the description is
> considered to be a class member and, as such, is bound by judgment,
> whether favorable or unfavorable, unless he has "opted out" of the
> suit. Under § 16(b) of FLSA, on the other hand, no person can
> become a party plaintiff and no person will be bound by or may
> benefit from judgment unless he has affirmatively "opted into" the
> class; that is, given his written consent.

*Id.* at 288. "This difference means that every plaintiff who opts in to a collective action has party

status, whereas unnamed class members in Rule 23 class actions do not. Consequently, although

the original plaintiffs in a collective action may pursue the suit on a representative basis, each FLSA

claimant has the right to be present in court to advance his or her own claim. Conversely, only those

plaintiffs who have opted in are bound by the results of the litigation." 7B CHARLES ALAN WRIGHT,

ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1807 (3d ed. 2005).

In *Atkins v. General Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983), the court

adopted a strict view of the FLSA's limitations provision, stating that limitations runs from the

opt-in date and a court could not "alter the express terms of the statute." The court approvingly cited

*Groshek v. Babcock & Wilcox Tubular Prods. Div.*, 425 F. Supp. 232 (E.D. Wis. 1977), in which

the district court rejected an argument similar to that raised in the present case, that the statute of

limitations should be tolled pending the court's decision on the conditional certification motion. *Id.*

21

at 234. The court stated that "[t]his argument ignores the language of 29 U .S.C. § 256" and noted that "the fact that under Rule 23 the filing of the named plaintiff's complaint does toll the statute of limitations in certain actions has no effect on this action where Rule 23 does not apply." *Id.* (citations omitted). Congress did not provide for tolling while a court considers whether to certify a case as a collective action under the FLSA. Rather, Congress "expressed concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint." *Grayson*, 79 F.3d at 1106 (citing 93 Cong. Rec. 2,182 (1947)). The record presents no extraordinary circumstances that would justify equitable tolling in this case. The plaintiffs' motion for equitable tolling of the statute of limitations is denied.

## IV.   Conclusion

The motion for equitable tolling is denied. The plaintiffs' motion for conditional certification and issuance of notice to potential class members is granted as to the class members who worked as Treasures and Centerfolds. Based on the present record, the following class is conditionally certified: bartenders and servers who worked at Treasures and Centerfolds from October 15, 2007, until the present. By **December 31, 2010**, the defendants must provide the plaintiffs with the names, current or last known addresses and telephone numbers, and dates of employment of the members of this class. By the same date, the parties must submit a proposed

notice for the court to review.  The parties must appear on **January 12, 2011, at 2:00 p.m.** for a status conference.

SIGNED on November 18, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge